**FILED**

JUN 1 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MINNESOTA LAWYERS MUTUAL       :
INSURANCE COMPANY              :
333 South Seventh Street       :
Suite 2200                     :
Minneapolis, MN  55402

      Plaintiff,

v.

WESTERMAN, HATTORI, DANIELS &  :
ADRIAN, LLP                    :
Serve                          :
Gina Monteith                  :
1250 Connecticut Avenue, N.W.  :
Suite 700                      :
Washington, D.C. 20036         :
                  :

      Defendants.         :

Case: 1:07-cv-01038
Assigned To : Urbina, Ricardo M.
Assign. Date : 6/11/2007
Description: Contract

### COMPLAINT FOR DECLARATORY RELIEF

1.     Plaintiff, Minnesota Lawyers Mutual Insurance Company (hereinafter "Lawyers Mutual"), a mutual insurance company insuring lawyers and law firms nationwide, including the District of Columbia, by its attorneys, Cunningham & Associates, brings this action against the law firm of Westerman, Hattori, Daniels & Adrian, LLP, and its members (hereinafter "Westerman"), under 28 U.S.C. §§ 1332, 2201, 2202.  Westerman is situated in the District of Columbia and conducts the practice of law here.

2.     Lawyers Mutual is corporation incorporated in the state of Minnesota with its principal place of business in the state of Minnesota.

3.     Jurisdiction lies under 28 U.S.C. § 1332(a) and venue under 28 U.S.C. § 1391.

4.      Lawyers Mutual issued to Westerman a Professional Liability Insurance Claims Made Policy of insurance no. 8796-0 (hereinafter "the Policy") for the period of October 1, 2003, to October 1, 2004, with a Prior Acts Retroactive date of October 1, 2003. See Policy, attached hereto as **EXHIBIT A**.

5.      In pertinent part, the policy states the following as to coverage:

WE will pay all sums up to the limit of OUR policy, which the INSURED may be legally obligated to pay as damages:

(1)      Due to any CLAIM arising out of any act, error or omission of the INSURED or a person for whose acts the INSURED or a person for whose acts the INSURED is legally responsible; and

(2)      Resulting from the rendering or failing to render legal or notary services for others, including acts, errors or omissions as administrator, conservator or guardian, executor or personal representative, trustee or escrow agent, title insurance agent, mediator, arbitrator or other participant in a dispute resolution process.

Provided, however, a <u>CLAIM is covered only if first made and reported to US during the POLICY PERIOD and the CLAIM results from a wrongful act, error or omission which occurred on or after the retroactive date shown on the prior acts endorsement attached to this policy</u>. A CLAIM is deemed first made and reported on the date you first report an incident or demand to US or OUR agent. (Emphasis added.)

6.    The policy also states the following as to claims made:

<u>This policy affords coverage for CLAIMS first reported to US during the POLICY PERIOD or extended reporting period, if the act, error or omission occurred during the POLICY PERIOD. This policy also covers CLAIMS resulting from any act, error or omission which occurred prior to the POLICY PERIOD and on or after the PRIOR ACTS RETROACTIVE DATE if the INSURED had no knowledge of facts which could reasonably support a CLAIM at the effective date of this policy</u>. (Emphasis added.)

Any CLAIM arising out of the same, related or continuing legal services which resulted in a CLAIM prior to the first policy issued to the INSURED by US will not be covered.

7.      The Policy defines a claim as follows:

The term "CLAIM(S)" means a demand or suit received by the INSURED for money or services. <u>It also means any incident which would reasonably support such a demand or any communication or notice to the INSURED of a potential CLAIM</u>. CLAIM(S) do not include disciplinary proceedings. (Emphasis added.)

2

8.     On or about September 29, 2004, during the policy period, Westerman notified Lawyers Mutual of a potential malpractice claim by a former client, Seed Rubber Co. (hereinafter "Seed") related to Westerman's representation of Seed in a patent application proceeding before the Board of Patent Appeals and Interferences (hereinafter "Board") of the United States Patent and Trademark Office (hereinafter "PTO") beginning on or about May 9, 1997.  Seed is a Japanese corporation employing the patent inventor and applicant, Shigeru Tamai.  The patent interference proceeding at issue was itself a component of a larger patent application proceeding that began March 29, 1993, in which Westerman represented Seed and Tamai.

9.     Westerman's recital of the circumstances in **EXHIBIT B** of the incipient malpractice claim significantly omitted material facts related to the alleged "act, error or omission" concerning the dispute with its former client.  See Incident Report, attached hereto as **EXHIBIT B**.

10.     In the interference proceeding at issue in this case, Seed and Tamai relied on two patent applications originally written in Japanese, Japanese Patent Application No. 3-068371 (hereinafter "application '371") and PCT international application PCT/JP2/00947 (hereinafter "PCT '947").  To prevail in the interference proceeding, Seed and Tamai's argument required the PTO to recognize both patent applications.[1]

11.     According to PTO regulations, in a patent interference proceeding, parties must file copies of any foreign applications that they use as evidence in the proceeding as well as certified English translations of those applications.  In preliminary motions filed

---

[1] The later-filed PCT '947 application created a link between application '371 and the U.S. patent application that Seed and Tamai filed in March 1993.  Without PCT '947 as a bridge, PTO regulations prevented the agency from recognizing Seed and Tamai's filing of application '371.  In turn, Seed and Tamai could prevail in the interference proceeding only if the PTO recognized their filing of application '371.  See Stevens v. Tamai, 366 F.3d 1325 (2004), attached hereto as **EXHIBIT C**.

after the PTO declared an interference on May 9, 1997, Westerman failed to include a certified English translation of PCT '947.

12.    The Board awarded priority to Seed and Tamai based on the translation of application '371 but denied it with respect to PCT '947, based on the missing certified English translation. Despite prevailing on the primary claim of patent interference, Westerman considered the error sufficiently grievous that it requested that the Board reconsider its decision regarding PCT '947 and "respectfully requested that the Board explain how Tamai is entitled to the benefit of the [Japanese '371 application] without the linking PCT application in the chain of priority." Sevens v. Tamai, 366 F.3d 1325, 1329 (2004) (quoting Tamai's Req. for Recons. At 7). Seed and Tamai's opponent both appealed to the U.S. Court of Appeals for the Federal Circuit (hereinafter "Federal Circuit") on this singular issue.

13.    On May 4, 2004, the Federal Circuit held that Tamai had failed to file the required certified English translation of PCT '947 and agreed with the arguments of both parties that the Board had committed an error of law in awarding Tamai the benefit of application '371 without recognizing the PCT '947 application. Stevens, 366 F.3d at 1329. The court reversed the Board's judgment and awarded priority to Tamai's opponent in the interference proceeding.

14.    On September 20, 2004, the Board refused to reopen the case.

15.    Westerman recently has advised Lawyers Mutual that it believes the policy covering a wrongful act, error or omission in the rendering of legal services occurring on or after the retroactive date of October 1, 2003, extends coverage and a defense of any claims that may subsequently be made against it related to its handling of

4

the <u>Stevens v. Tamai</u> matter, an adverse ruling to its client involving putative wrongful conduct by Westerman occurring well before October 1, 2003.[2]

16.    Coverage and duty to defend were initially denied Westerman by Lawyers Mutual on October 1, 2004, and, having heard nothing further from Westerman in the succeeding three years, it believed the file to be closed. It is now advised by Westerman that it has concluded its liability did not arise until the case was resolved in the Federal Circuit, which denied its client's motion for reconsideration and issued its mandate on September 14, 2004.

17.    Westerman has also advised Lawyers Mutual on May 11, 2007, of another claim related to this same dispute based upon Westerman's advice to its client that the Patent Office would reopen the case. The client allegedly declined to reach a settlement of the dispute with the opposing party in reliance on this advice, which proved to be incorrect. Lawyers Mutual has denied this demand for coverage and a defense on May 30, 2007.

18.    Westerman's position as to coverage and a defense is contrary to the terms and conditions of the subject pleading in that:

(a)    As to both claims, the wrongful act, error or omission committed by Westerman occurred on June 25, 2002, the date the Board ruled against its client, and, in any event, no later than March 13, 2003, the date the Board refused to reconsider its ruling adverse to Westerman's client on the crucial English translation issue.

(b)    No coverage and therefore no defense is afforded an insured for claims occurring prior to the policy retroactive date of October 1, 2003.

---

[2] The Board's ruling adverse to Westerman's client was made on June 25, 2002, and reconsideration on the crucial issue of the omission of the English translation entered on March 13, 2003.

(c)     Also, as to the second claim, the wrongful act, error or omission was not the result of independent wrongdoing but directly related to and a part of the alleged misconduct before the Board prior to policy coverage inception.

19.     Westerman's position as to coverage and a defense is contrary to controlling case law in the District of Columbia.  See <u>Knight v. Furlow</u>, 553 A.2d 1232 (D.C. 1989).

20.     Presently there is an actual controversy between the parties requiring this Court's involvement and declaration of their rights and legal relations.

21.     Upon information and belief, costs incurred by Westerman in its own defense, which it seeks Lawyers Mutual to pay, will be in excess of $75,000.00.

22.     Upon information and belief, the amount of a judgment entered against Westerman in a malpractice suit by its former client is expected to be in excess of $75,000.00.

WHEREFORE, Lawyers Mutual asks this Court for the following:

A.     Declaratory judgment in its favor determining it has no duty to defend or provide insurance coverage to Westerman for any act, error or omission in the provision of legal services related to the case of <u>Stevens v. Tamai</u>, initially a proceeding filed in the United States Patent Office on March 29, 1993, and any subsequent proceeding there, before the Board of Patent Appeals and Interferences, and then before the U.S. Court of Appeals for the Federal Circuit.

B.     An award of its costs and any other relief as this Court may deem proper.

Minnesota Lawyers Mutual Insurance Company

s/J.C.

Joseph F. Cunningham, Bar No. 65532
CUNNINGHAM & ASSOCIATES, PLC
1600 Wilson Boulevard, Suite 905
Arlington, VA 22209
Telephone: (703) 294-6500
Facsimile: (703) 294-4885
*Attorneys for plaintiff Lawyers Mutual*

7

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Minnesota Lawyers Mutual Insurance Company    *58966* | Westerman, Hattori, Daniels & Adrian, LLP |
| 88888 | |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Joseph F. Cunningham CUNNINGHAM & ASSOCIATES 1600 Wilson Blvd., Suite 905 Arlington, VA  22209 703-294-6500 | Case: 1:07-cv-01038 Assigned To : Urbina, Ricardo M. Assign. Date : 6/11/2007 Description: Contract |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSH
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ◉ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ◉ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**       OR       ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

*(1)*

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☒ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. 1332(a), 2201, 2202. Complaint for declaratory relief regarding denial of insurance for attorney malpractice; parties reside in separate states.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ _____ <br> JURY DEMAND: | Check YES only if demanded in complaint <br> YES ☐  NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☐  If yes, please complete related case form.

DATE  June 7, 2007    SIGNATURE OF ATTORNEY OF RECORD  _____  s/L.C.

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.



**DECLARATIONS**

FROM MINNESOTA LAWYERS MUTUAL INS. CO.

**Policy Number** 8796    01

*Issued by*

**MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY**

333 South Seventh Street, Suite 2200; Minneapolis, MN 55402

(612) 341-4530        (800) 422-1370        fax (612) 349-6865

### LAWYERS PROFESSIONAL LIABILITY POLICY
### (THIS IS A CLAIMS-MADE POLICY - READ CAREFULLY)

---

Item 1.
Named Insured
   Westerman, Hattori, Daniels & Adrian, LLP
Office Address
   1250 Connecticut Avenue, NW
   Washington, DC 20036

---

Item 2.
Policy Period

   10/01/2003                to                10/01/2004
   (the Effective Date)                        (the Expiration Date)
   12:01 A.M., standard time at the address of the Named Insured stated herein

---

Item 3.
Limits of Liability          $    5,000,000    Per Claim

                             $    5,000,000    Aggregate

---

Item 4.
Deductible Amount            $       25,000    Per Claim

---

Item 5.
**TOTAL NUMBER OF LAWYERS:**    17          **TOTAL PREMIUM:** $41,106

---

Item 6.
Applicable Forms and Endorsements:
   MLM-19 (1-92), MLM-211 (1-01), MLM-2000 (6-00), MLM-74 (6-00)

---

In witness whereof, Minnesota Lawyers Mutual Insurance Company has caused this policy to be signed
by its President and Secretary and countersigned by a duly authorized agent of the Company.

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY

BY _____        BY _____
   John J. Bowden, Secretary             Joseph H. Bixler, President

                                       _____
                                          Authorized Agent

MLM-34 (5-94)

**PLAINTIFF'S
EXHIBIT
A**

**DECLARATIONS**



# PROLEGIA

FROM MINNESOTA LAWYERS MUTUAL INS. CO.

*Issued by*

**MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY**

333 South Seventh Street, Suite 2200; Minneapolis, MN 55402

(612) 341-4530        (800) 422-1370        fax (612) 349-6865

**Policy Number** 8796    01

### LAWYERS PROFESSIONAL LIABILITY POLICY
### (THIS IS A CLAIMS-MADE POLICY - READ CAREFULLY)

In witness whereof, Minnesota Lawyers Mutual Insurance Company has caused this policy to be signed by its President and Secretary and countersigned by a duly authorized agent of the Company.

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY

BY _____
John J. Bowden, Secretary

BY _____
Joseph H. Bigler, President

Carlena F. Orloff
Authorized Agent

# MINNESOTA LAWYERS MUTUAL
### ® INSURANCE COMPANY

## LAWYERS PROFESSIONAL LIABILITY INSURANCE
## CLAIMS-MADE POLICY

**COVERAGE**

WE will pay all sums up to the limit of OUR liability, which the INSURED may be legally obligated to pay as DAMAGES:

(1)   Due to any CLAIM arising out of any act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible; and

(2)   Resulting from the rendering or failing to render legal or notary services for others, including acts, errors or omissions as administrator, conservator or guardian, executor or personal representative, trustee or escrow agent, title insurance agent, mediator, arbitrator or other participant in a dispute resolution process.

Provided, however, a CLAIM is covered only if first made and reported to US during the POLICY PERIOD and the CLAIM results from a wrongful act, error or omission which occurred on or after the retroactive date shown on the prior acts endorsement attached to this policy.  A CLAIM is deemed first made and reported on the date you first report an incident or demand to US or OUR agent.

**DEFENSE AND SETTLEMENT**

WE have the exclusive right to investigate and negotiate CLAIMS and WE will defend any suit seeking DAMAGES against the INSURED to which this policy affords coverage.

WE will not settle a CLAIM without the written consent of the INSURED.  If, however, the INSURED refuses to consent to any settlement recommended by US and elects to contest the CLAIM or continue legal proceedings, then OUR liability for the CLAIM will not exceed the amount for which the CLAIM could have been settled within the applicable limit including CLAIM EXPENSE incurred with OUR consent to the date of such refusal.

The INSURED must cooperate with US for the purpose of investigation and defense without charge by the INSURED for reimbursement of the INSURED's expenses.

After WE have paid the limit of liability:
(1)   WE will not be obligated to pay any CLAIM, judgment or expense.
(2)   WE will not be obligated to undertake or continue the defense or investigation of any CLAIM or suit.
(3)   WE may withdraw from any suit WE are defending by tendering the defense to the INSURED, which tender the INSURED must accept.

**TERRITORY**

This policy applies to any act, error or omission which occurs anywhere in the world, provided the CLAIM is made and the suit is brought within the United States and its territories or Canada.

**CLAIMS PROVISIONS**

This policy affords coverage for CLAIMS first reported to US during the POLICY PERIOD or extended reporting period, if the act, error or omission occurred during the POLICY PERIOD.  This policy also covers CLAIMS resulting from any act, error or omission which occurred prior to the POLICY PERIOD and on or after the PRIOR ACTS RETROACTIVE DATE if the INSURED had no knowledge of facts which could reasonably support a CLAIM at the effective date of this policy.

Any CLAIM arising out of the same, related or continuing legal services which resulted in a CLAIM prior to the first policy issued to the INSURED by US will not be covered.

**DEFINITIONS**

The term "CLAIM(S)" means a demand or suit received by the INSURED for money or services. It also means any incident which could reasonably support such a demand or any communication or notice to the INSURED of a potential CLAIM. CLAIM(S) do not include disciplinary proceedings.

The term "CLAIM EXPENSE(S)" includes fees charged by an attorney(s) retained by US to defend CLAIMS and all expenses incurred by US or with OUR consent in the investigation and negotiation of any CLAIMS. Salary charges or expenses of OUR regular employees are not included. Expenses of, or charges by, the INSURED without OUR prior written consent are not CLAIM EXPENSES.

The term "DAMAGES" means monetary judgments or monetary settlements. "DAMAGES", however, does not include any of the following:
(1)   any fine, penalty or sanction imposed by law or otherwise, assessed against any INSURED;
(2)   punitive or exemplary damages, whether or not allowed by statute or common law; or
(3)   legal fees, costs or disbursements paid or owed to the INSURED or paid or owed by the INSURED.

The term "INSURED" includes:
(1)   the named INSURED in Item 1 of the declarations and any PREDECESSOR FIRM;
(2)   any current partner or employee of the named INSURED for legal services rendered:
    (a)   on behalf of the named INSURED; or
    (b)   prior to their relationship with the named INSURED, subject to the PRIOR ACTS RETROACTIVE DATE, if any;
(3)   any former partner or employee for former acts, errors or omissions in legal services on behalf of the named INSURED and who is not at the time the CLAIM is made engaged in the private practice of law;
(4)   the heirs, assigns and legal representatives of the named INSURED in the event of the INSURED's death, incapacity or bankruptcy to the extent that the INSURED would have been covered; and
(5)   any lawyer who is acting as of counsel lawyer and:
    (a)   is named and described in the application as of counsel; and
    (b)   is performing legal services on behalf of the named INSURED.

The term "PART-TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY" means an attorney who regularly engages in a private law practice and maintains a separate law office for that purpose in addition to acting as an employee of a governmental body, subdivision or agency.

The term "POLICY PERIOD" means the period from the effective date of the policy to the expiration date or earlier termination date of the policy. Any extended reporting period is excluded.

The term " PREDECESSOR FIRM" means any law firm to whose liabilities the named INSURED is the majority successor in interest.

The term "PRIOR ACTS RETROACTIVE DATE" means the date before which no act, error or omission is covered even if a CLAIM resulting therefrom is reported during the POLICY PERIOD or extended reporting period.

The term "WE", "US" and "OUR" refer to Minnesota Lawyers Mutual Insurance Company.

**EXCLUSIONS**

This policy does not afford coverage for the following:
(1)   any CLAIM for DAMAGES arising out of the dishonest, criminal, malicious or deliberately fraudulent   act, error or omission of the INSURED.
(2)   any CLAIM arising out of bodily injury, sickness or death of any person or damage to or loss of  use of any tangible property.
(3)   any CLAIM arising out of legal services or advice rendered by any INSURED in connection with any business not named in the declarations:
    (a)   which is owned by any INSURED;
    (b)   in which any INSURED is a partner or employee; or
    (c)   which is controlled, operated or managed by any INSURED individually, or in a fiduciary capacity; including the ownership, maintenance or use of property.
    This exclusion does not apply if at the time such legal service or advice was rendered, any INSURED had a total pecuniary or beneficial interest of less than 10% of such business enterprise.
(4)   any CLAIM made by an employer against an INSURED who is a salaried employee of such employer, unless the CLAIM is made against an INSURED acting as a PART-TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY.
(5)   any loss sustained by an INSURED as a beneficiary or distributee of any trust or estate.
(6)   any CLAIM arising out of an INSURED's activities as an officer or director of an employee trust, charitable organization, corporation, company or business other than that of the named INSURED.
(7)   any CLAIM arising out of an INSURED's activities as an elected public official or as a salaried employee of a governmental body, subdivision or agency thereof, unless the CLAIM arises out of legal services rendered as a PART-TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY.

SPECIMEN

(8)    any CLAIM arising out of an INSURED's activities as a fiduciary under the Employee Retirement Income Security Act of 1974, its amendments and any regulation or order issued pursuant thereto. This exclusion does not apply if the INSURED is deemed to be a fiduciary solely by reason of legal advice rendered with respect to an employee benefit plan.

(9)    any CLAIM based upon or arising out of alleged discrimination by the INSURED including those based on race, creed, age, sex, marital status or sexual preference.

(10)   any CLAIM based upon or arising out of alleged sexual harassment by the INSURED.

(11)   any CLAIM made against an INSURED if such CLAIM arises out of an act, error or omission, or personal injury of a lawyer with whom the INSURED shares office space or common facilities, if that lawyer is not also an INSURED under this policy.

(12)   any CLAIM made against an INSURED if such CLAIM arises out of any indemnity agreement entered into by an INSURED.

(13)   any CLAIM arising out of:
  (a)    promotion, solicitation or sale of securities or other investments by the INSURED; or
  (b)    performance of securities or other investments recommended, directed or made by the INSURED.

---

**INNOCENT INSURED PROTECTION**

If a CLAIM is made because of the dishonest, fraudulent, malicious or criminal act, error or omission of an INSURED, WE will cover any INSURED who did not participate in, acquiesce in or fail to take appropriate action after having personal knowledge of such acts, errors or omissions.

If a CLAIM has been concealed from US by an INSURED who was responsible for such CLAIM and which, but for such concealment, would have been covered, WE will cover any INSURED who did not participate in, acquiesce in or fail to promptly notify US after having personal knowledge of such concealment.

Provided, however, to be covered the INSURED must promptly notify US of such acts or concealment and otherwise comply with all policy provisions. WE will have the right to recover against any INSURED responsible for any CLAIM EXPENSE or DAMAGES paid under this paragraph.

---

**EXTENDED REPORTING PERIOD OPTION**

The named INSURED may purchase extended reporting period coverage for CLAIMS arising out of any act, error or omission occurring on or after the PRIOR ACTS RETROACTIVE DATE and prior to the end of the POLICY PERIOD which are otherwise covered. The period of extended reporting coverage will be 12 months following termination of this policy. It will be annually renewable for five additional years at the option of the named INSURED upon payment of the premium determined by US in accordance with the rules and rates in effect during the POLICY PERIOD shown in Item 2 of the declarations.

Extended reporting period coverage is available or renewable only if:
(1)    the named INSURED has paid all premium and deductible amounts due;
(2)    the premium is paid within 30 days of the effective date or renewal date; and
(3)    renewal coverage is not accepted by or offered to the named INSURED in Item 1 of the declarations.

---

**NOTICE OF CLAIMS**

In event of a CLAIM, the INSURED must:
(1)    give immediate written notice to US; and
(2)    forward every demand, notice, summons or other communication received by the INSURED or his or her representative to:
      Minnesota Lawyers Mutual Insurance Company
      333 South Seventh Street, Suite 2200
      Minneapolis, MN  55402
*In all events, you must give US notice during the POLICY PERIOD or extended reporting period in order for coverage to apply.*

---

**LIMIT OF LIABILITY**

The per claim limit in Item 3 of the declarations is the maximum amount of OUR liability for all DAMAGES and CLAIM EXPENSE arising out of the same or related legal services without regard to the number of CLAIMS or claimants.

All CLAIM EXPENSE shall first be subtracted from the limit of liability, with the remainder, if any, being the amount available to pay money DAMAGES.

The aggregate limit in Item 3 of the declarations is the total amount of OUR liability for DAMAGES and CLAIM EXPENSE from CLAIMS first reported to US during the POLICY PERIOD or during the extended reporting period, if any.

The inclusion in this policy of more than one INSURED will not increase the limits of OUR liability.

---

**DEDUCTIBLE**

The limit of liability will apply in excess of the deductible.

The deductible will be subtracted from the total amount of DAMAGES resulting from each CLAIM reported to US during the POLICY PERIOD.

The deductible is payable within 30 days of written demand and will be billed as incurred by US.

**REIMBURSEMENT TO MLM**

The INSURED will be liable for amounts WE have paid in settlement of CLAIMS or satisfaction of judgments in excess of the limits of OUR liability.  The INSURED will also be liable for amounts paid within the deductible. These amounts will be payable within 30 days of written demand

**ARBITRATION**

If WE and the named INSURED disagree as to the interpretation, validity, construction or enforceability of this insurance policy, either party may make a written demand that these issues be determined by arbitration.  In this event, each party shall select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days as to the identity of the third arbitrator, either party may request that the selection of the third arbitrator be made by a judge of District Court in Minnesota. Each party will pay the expenses it incurs, and bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in Hennepin County, Minnesota.  A decision agreed to by two of the arbitrators will be binding.  In the event this arbitration clause is inconsistent with the Uniform Arbitration Act, Minn. Stat. 572.08 to 572.30, the Uniform Arbitration Act statutes will apply.

**SUBROGATION**

To the extent of any payment under this policy, WE will be subrogated to all of the INSURED's rights of recovery. The INSURED will do whatever is necessary to secure such rights.  The INSURED will do nothing to prejudice these rights.

**ACTION AGAINST US**

No action shall lie against US unless:
(1)    The INSURED has fully complied with all the terms of this policy and
(2)    The amount of the INSURED's obligation to pay has been finally determined by judgment after trial or by written agreement of the INSURED, the claimant and US.

No one may join US as a party to an action against the INSURED to determine the INSURED's liability under this policy.  WE may not be impleaded by the INSURED.  Bankruptcy or insolvency of the INSURED or his or her estate will not relieve US of any of OUR obligations.

**OTHER INSURANCE**

WE will not pay a greater proportion of settlements, judgments and CLAIM EXPENSES under this policy than OUR limit of liability bears to the total limits of liability of all policies covering a CLAIM.

**CANCELLATION OR NON-RENEWAL**

This policy may be cancelled by:
(1)    The INSURED by giving US written notice stating when thereafter cancellation is to be effective.  Ninety percent of the pro-rata unearned premium will be returned to the INSURED.
(2)    US with ten days written notice for non-payment of premium.  WE will give you notice of premium due and the date due at least ten days before the effective cancellation date.

WE may cancel this policy during the term of the policy with 60 days written notice in accordance with state statutes regulating mid-term cancellation.

OUR written notice will be made by first class mail addressed to the named INSURED shown in Item 1 of  the declarations or by delivery to the named INSURED's last known address.  The effective date of cancellation stated in the notice will become the end of the POLICY PERIOD.  Earned premiums will be computed pro-rata.  Premium adjustments will be made as soon as practicable.  OUR tender of unearned premium is not a precondition of cancellation.

WE may non-renew for any reason or no reason on 60 days notice prior to the expiration date of this policy.

Changes in the terms available on renewal will not be deemed to be a non-renewal of the policy.

**REPRESENTATION IN APPLICATION**

The application for coverage is a part of this policy.

By acceptance of this policy the INSURED agrees:
(1)   the statements in the application are his or her representations;
(2)   this policy is issued in reliance upon the truth of such representations; and
(3)   this policy embodies all of the agreements between the INSURED, US and/or OUR agent.

---

**CHANGES**

The terms of this policy shall not be waived or changed, except by written endorsement provided by US.

Any additions to or deletions from the attorneys named in the application must be reported to US within 30 days.  In the event of any such changes WE reserve the right to re-evaluate the risk and, at OUR option, take appropriate underwriting actions.

Any premium adjustments will be made on a pro-rata basis.

---

**ASSIGNMENT**

The INSURED may not assign this policy to any other person or entity.

---

**MUTUAL POLICY CONDITIONS**

The named INSURED is a member of Minnesota Lawyers Mutual Insurance Company and shall participate in the distribution of dividends, to the extent and upon the conditions fixed and determined by the Directors.

The named INSURED has one vote by virtue of this policy in the election of the Directors of MLM.

Policyholders are not assessable for the debts and obligations of the Company.

---

**NOTICE OF ANNUAL MEETING**

The policyholder named herein is hereby notified that while this policy is in force, he, she or it is by virtue hereof a member of the Minnesota Lawyers Mutual Insurance Company and that the annual meeting of said company is held at the same time and place of the annual convention of the Minnesota State Bar Association.  The policyholder is the named INSURED in Item 1 of the declarations.

---

In witness thereof, WE caused this policy to be executed and attested.

By

_____                              _____
, Secretary                                                                              , President

djt 10/1/04



WESTERMAN
HATTORI
DANIELS &
ADRIAN, LLP

04-426

**FACSIMILE**

1250 Connecticut Avenue, NW – Suite 700
Washington, DC 20036

Tel: (202) 822-1100
Fax: (202) 822-1111

| | |
|---|---|
| Date: | September 29, 2004 |
| To: | Carlene Orloff<br>Client Relations Coordinator<br>Minnesota Lawyers Mutual |
| Re: | Insurance Report |
| Fax Number: | 1800-305-1510 |
| Number of Pages | 4   (including cover sheet) |
| From: | William F. Westerman/mcu        (9999-9910) |

THE INFORMATION CONTAINED IN THIS MESSAGE IS CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED. This message may also be an attorney/client communication that is privileged and confidential. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by calling us collect and return the original message to us at the above address by mail. Thank you.

Q:\Attorney Files\Westerman W\Fax ltr Carlene Orloff.doc



PLAINTIFF'S
EXHIBIT
B



## WESTERMAN HATTORI DANIELS & ADRIAN, LLP

| | | |
|---|---|---|
| WILLIAM F. WESTERMAN | THOMAS E. BROWN* | PATENT AGENT |
| KEN HATTORI | | SHUJI YOSHIZAKI |
| SCOTT M. DANIELS | MICHAEL J. CARDI | |
| STEPHEN G. ADRIAN | M. SCOTT ALPRIN | |
| JOHN P. KONG | JOSEPH L. FELBER | JAPANESE BENRISHI |
| SADAO KINASHI | KENNETH H. SALEN* | TOMOKO NAKAJIMA |
| THOMAS J. MACPEAK | WILLIAM M. SCHERTLER | YASUHISA KUROSE |
| EDWARD F. KENEHAN, JR. | *Practice limited to matters and | |
| NICOLAS E. SECKEL* | proceedings before federal courts and agencies | |

September 29, 2004

### VIA FACSIMILE

Carlene Orloff
Client Relations Coordinator
Minnesota Lawyers Mutual
2200 Accenture Tower
333 South Seventh Street
Minneapolis, MN 55402

Dear Carlene:

Please be advised that we are forwarding this incident report to our previous insurer, General Star.

With best regards,

Very truly yours,

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP

William F. Westerman

WFW/meu

Report of appeals from the Tamai interference                    9/29/2004

The patent application (USSN 08/196,839) at issue for our client Tamai was filed in the
Patent Office on February 15, 1994. It was a continuation of USSN 08/030,183, filed on
March 29, 1993. The '183 application was the national stage a PCT international
application (PCT/JP2/00947) filed on July 24, 1992. Priority for the PCT international
application was based on a Japanese application (JP '371) filed on July 31, 1991.

An interference was declared on May 9, 1997 between the '839 application and a patent
to Stevens (USP 5,393,368) issued on February 28, 1995. Stevens application (USSN
08/192,471) was filed on February 7, 1994.

During the preliminary motions period of the interference, as representatives of Tamai,
we filed a motion requesting that priority be given to Tamai's Japanese parent application
and the PCT international application, both of which predated any alleged invention date
put forward by our opponent, Stevens.

During the interference, Stevens raised the issue of whether Tamai supplied them with a
verified English translation of the PCT international application, which was filed in
Japanese. Tamai argued that it was not necessary since the certified English translation
of JP '371 is substantially identical to the specification of the '183 application and the
PCT '947 specification is substantially the disclosure of JP '371.

The Board of Patent Appeals and Interferences, at the Patent Office, ruled in favor of
Tamai, our client, awarding priority to Tamai's Japanese parent application (JP '371).

Even after Tamai filed a Request for Reconsideration to the Board of Patent Appeals and
Interferences, to clarify their earlier decision, the Board reaffirmed (March 13, 2003) that
Tamai should have priority.

After this reaffirmation of priority, Stevens pursued an appeal to the Court of Appeals for
the Federal Circuit (which handles all patent appeals).

In preparing and filing the Tamai brief and reply brief for the Federal Circuit, we
believed we had a clear winning case, on the basis that the filing date of an international
PCT application is the filing date of a U. S. national stage application which claims
priority from the PCT application, and therefore there was no need for Tamai to request
priority of the PCT application, since the involved application was not a new application,
but merely and entry into the national stage.

An oral hearing was held at the Federal Circuit on February 6, 2004. The decision was
handed down on May 4, 2004. It awarded priority to Stevens. We felt and still feel that
this was a wrong decision and requested reconsideration on May 18, 2004.

The Federal Circuit denied the Request for Reconsideration.

Still believing that the Federal Circuit erred, Tamai filed requests to the Patent Office to reopen the case and have the Patent office request reconsideration by the Federal Circuit.

Tamai also filed an appeal to the Supreme Court on September 8, 2004.

Just recently on September 20, 2004 the Patent Office issued a decision that the Requests to reopen the case at the Patent office were denied. We believe that this denial could reasonably be expected to bring rise to a claim against our firm and/or our predecessor.

LEXSEE 366 F3D 1328

## CHRISTOPHER J. STEVENS, Appellant, v. SHIGERU TAMAI, Appellee.

### 03-1479

### UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

*366 F.3d 1325; 2004 U.S. App. LEXIS 8773; 70 U.S.P.Q.2D (BNA) 1765*

**May 4, 2004, Decided**

**SUBSEQUENT HISTORY:** Rehearing denied by, Rehearing, en banc, denied by *Stevens v. Tamai, 2004 U.S. App. LEXIS 12793 (Fed. Cir., June 10, 2004)* US Supreme Court certiorari denied by *Tamai v. Stevens, 2004 U.S. LEXIS 6979 (U.S., Oct. 18, 2004)*

**PRIOR HISTORY:** [**1] Appealed from: United States Patent and Trademark Office Board of Patent Appeals and Interferences. (Interference No. 103,662).

**DISPOSITION:** Reversed and remanded.

**COUNSEL:** Carl E. Moore, Jr., Marshall, Gerstein & Borun LLP, of Chicago, Illinois, argued for appellant. With him on the brief were Sandip H. Patel, Michael R. Weiner, and James P. Zeller.

Edward F. Kenehan, Jr., Armstrong, Westerman & Hattori, LLP, of Washington, DC, argued for appellee. With him on the brief was William F. Westerman.

**JUDGES:** Before MICHEL, CLEVENGER, and SCHALL, Circuit Judges.

**OPINION BY:** CLEVENGER

**OPINION:** [*1327] CLEVENGER, Circuit Judge.

Christopher J. Stevens appeals a final decision of the United States Patent Office Board of Patent Appeals and Interferences ("Board") granting priority in an interference proceeding to Shigeru Tamai. Because the Board erred in granting Shigeru Tamai the benefit of Japanese Patent Application No. 3-068371, we reverse.

I

Christopher J. Stevens ("Stevens") and Shigeru Tamai ("Tamai") are parties to Interference No. 103,662, declared May 9, 1997. Stevens's involved *U.S. Patent No. 5,393,368* ("the *368 patent*") was filed February 7, 1994, and issued February 28, [*1328] 1995. Tamai's involved Application [**2] No. 08/196,839 ("the '839 application") was filed February 15, 1994. The '839 application is a continuation-in-part of U.S. Patent Application No. 08/030,183 ("the '183 application"), which was filed March 29, 1993. The notice declaring the interference accorded the '839 application the benefit of the filing date of the '183 application. On the basis of the March 29, 1993 filing date, Tamai was accorded senior party status.

Both parties filed preliminary motions under 37 C.F.R. § 1.633(f), which provides that a party may file a preliminary motion "to be accorded the benefit of the filing date of an earlier filed application. See § 1.637(a) and (f)." 37 C.F.R. § 1.633(f) (2003). Rule 637 states in relevant part:

> (a) A party filing a motion has the burden of proof to show that it is entitled to the relief sought in the motion. Each motion shall include a statement of the precise relief requested, a statement of the material facts in support of the motion, in numbered paragraphs, and a full statement of the reasons why the relief requested should be granted. . . .
>
> ***
>
> (f) A preliminary motion for benefit under § 1.633(f) [**3] shall:



PLAINTIFF'S EXHIBIT

C

tabbies

366 F.3d 1325, *1328; 2004 U.S. App. LEXIS 8773, **3;
70 U.S.P.Q.2D (BNA) 1765

(1) Identify the earlier application.

(2) . . . When the earlier application is an application filed in a foreign country, certify that a copy of the application has been served on all opponents. If the earlier filed application is not in English, the requirements of § 1.647 must also be met.

(3) Show that the earlier application constitutes a constructive reduction to practice of each count.

37 C.F.R. § 1.637 (2003) (emphasis added). Rule 647 describes what a party must do when relying on or producing a document that is written in a language other than English. It states:

When a party relies on a document or is required to produce a document in a language other than English, a translation of the document into English and an affidavit attesting to the accuracy of the translation shall be filed with the document.

37 C.F.R. § 1.647 (2003).

Stevens's motion was based on several European applications showing a constructive reduction to practice as early as February 10, 1993. Tamai did not oppose the motion, which was granted by the Board.

Tamai's motion was based on Japanese Patent **[**4]** Application No. 3-68371 ("the Japanese '371 application") and PCT Application No. PCT/JP92/00947 ("the PCT '947 application"). Both applications are in Japanese. Tamai filed a translation of the Japanese '371 application with the motion. Stevens opposed the motion, arguing, inter alia, that Tamai had not met its burden of proof because the motion "failed to comply with 37 C.F.R. § 1.637" because "no copies of [the Japanese '371 application] and the PCT '947 application were served with the motion pursuant to 37 C.F.R. § 1.637(f)(2) [and] no translation of the PCT '947 application was served with the motion pursuant to 37 C.F.R. § 1.637(f)(2)." In reply, Tamai stated that copies of the Japanese language applications, the Japanese '371 application and the PCT

'947 application, while not served with the motion, were in the record. Tamai also submitted an affidavit attesting that the disclosures of the two foreign language applications were substantially the same. Importantly, with neither the original motion nor the reply did Tamai include an English language translation of the PCT '947 application and **[**5]** an affidavit attesting to the accuracy of the translation.

The Board denied Tamai's motion for benefit as directed to the PCT '947 application because "Tamai did not supply a **[*1329]** translation of the PCT application." Nonetheless, the Board examined the Japanese '371 application and determined that the Japanese '371 application "is a constructive reduction to practice of the count." Accordingly, the Board entered judgment against Stevens.

Despite prevailing in the interference, Tamai requested reconsideration of that part of the Board's decision denying Tamai's motion for benefit as directed to the PCT '947 application. Tamai's request argued that the translation of the PCT '947 application was in the record because the '183 application was in the record and "the U.S. Patent and Trademark Office identified and accepted the '183 application as a translation of Tamai's foreign language PCT application." According to Tamai, the requirements of Rule 647 that "a translation of the document into English and an affidavit attesting to the accuracy of the translation" be provided, were made inconsequential in light of 37 C.F.R. § 1.639(a). n1 Tamai's final comment in **[**6]** support of its argument, on the last page of the request for reconsideration, states: "If this request is denied, it is respectfully requested that the Board explain how Tamai is entitled to the benefit of the [Japanese '371 application] without the linking PCT application in the chain of priority." Tamai's Req. for Recons. at 7. Stevens opposed Tamai's motion, arguing, inter alia:

Stevens agrees with Tamai's apparent position that the Board erred in granting Tamai priority benefit of [the Japanese '371 application] in view of Tamai's failure to satisfy the requirements for obtaining priority benefit of Tamai's PCT application. Because Tamai is not entitled to the priority benefit of the PCT application, the Board also should have denied Tamai's motion for the priority

366 F.3d 1325, *1329; 2004 U.S. App. LEXIS 8773, **6;
70 U.S.P.Q.2D (BNA) 1765

benefit of [the Japanese '371 application].

Stevens's Opp'n to Tamai's Req. for Recons. at 9 (citing *35 U.S.C. § 119(a)*).

> n1 Rule 639(a) states, in part:
>
>> Proof of any material fact alleged in a motion, opposition, or reply must be filed and served with the motion, opposition, or reply unless the proof relied upon is part of the interference file or the file of any patent or application involved in the interference or any earlier application filed in the United States of which a party has been accorded or seeks to be accorded benefit.
>
> 37 C.F.R. § 1.639(a) (2003).

**[\*\*7]**

The Board agreed to reconsider its final decision, but refused to modify it because, "Tamai was required to file a translation of the PCT application along with the motion. This Tamai did not do." Addressing Tamai's argument that the '183 application was the translation of the PCT '947 application, the Board noted that "Tamai did not state that the '183 application is a translation of the PCT application, attaching same, when the motion for benefit was filed." Also, the Board concluded that Rule 637(f) requires that certain documents have to be filed with a motion for benefit and those requirements were not "obviated" by Rule 639(a). Further, the Board concluded that Tamai's failure to follow the rules prejudiced Stevens, who was entitled to expect that Tamai would follow them. Finally, addressing Tamai's linking argument, the Board concluded that any inconsistency in the treatment of the Japanese '371 application and the PCT '947 application "arises because of Tamai's inconsistent actions in regard to these two applications." However, by not modifying its judgment, the Board affirmed its judgment in favor of Tamai. Stevens appeals the decision on reconsideration, which is a final **[\*\*8]** decision of the Board. This court has jurisdiction under *28 U.S.C. § 1295(a)(4)(A)*.

**[\*1330] II**

We review factual determinations of the Board for substantial evidence, *In re Gartside, 203 F.3d 1305, 1311-15 (Fed. Cir. 2000)*, while we review statutory interpretation de novo, *Studiengesellschaft Kohle m.b.H. v. Shell Oil Co., 112 F.3d 1561, 1564 (Fed. Cir. 1997)* (construing *35 U.S.C. § 120*). We review "the Board's application of its permissive interference rules for an abuse of discretion." *Brown v. Barbacid, 276 F.3d 1327, 1332 (Fed. Cir. 2002)*; see also *Abrutyn v. Giovanniello, 15 F.3d 1048, 1050 (Fed. Cir. 1994)*; *Gerritsen v. Shirai, 979 F.2d 1524, 1527-28 (Fed. Cir. 1992)*. An abuse of discretion occurs where the decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) involves a record that contains no evidence on which the Board could rationally base its decision.*Eli Lilly & Co. v. Bd. of Regents of the Univ. of Wash., 334 F.3d 1264, 1266-67 (Fed. Cir. 2003)* **[\*\*9]** (citing *Gerritsen, 979 F.2d at 1529*).

III

On appeal, Stevens argues that the Board erred in granting Tamai's motion for benefit of the Japanese '371 application. According to Stevens, the statutory limits of *35 U.S.C. § 119(a)* preclude Tamai directly claiming the benefit of the Japanese '371 application because that application was filed more than one year before the '183 application. In particular, Stevens asserts that in order to obtain the benefit of the Japanese '371 application, Tamai must obtain the benefit of the intervening PCT '947 application. In Stevens's view, because Tamai failed to prove its claim for priority benefit of the PCT '947 application, and cannot therefore obtain the benefit of the Japanese '371 application, Tamai has failed to prove a constructive reduction to practice of the subject matter corresponding to the count prior to the filing date of the '183 application, March 29, 1993. Based on Stevens's preliminary motion, the Board accorded Stevens an effective filing date of February 10, 1993. Because February 10, 1993 is an earlier effective filing date than March 29, 1993, Stevens argues that he should be awarded **[\*\*10]** judgment in the interference.

Tamai does not argue that his involved application can be accorded the benefit of the Japanese '371 application if he is not accorded the benefit of the PCT '947 application. Rather, Tamai supports the Board's decision in his favor by arguing that the Board erred in

not according him the benefit of the PCT '947 application. In particular, Tamai argues that a preliminary motion for benefit is not required for him to be entitled to the benefit of the PCT '947 application, or, alternatively, if a motion for benefit was required, his actions in this case were sufficient to establish entitlement to the benefit of the PCT '947 application.

IV

As a matter of convenience, we first address Stevens's argument. We agree with Stevens: because Tamai failed to prove his entitlement to the benefit of the PCT '947 application, it was error for the Board to accord Tamai the benefit of the Japanese '371 application.

An interference is a proceeding instituted in the United States Patent and Trademark Office, designed to resolve questions of priority and patentability between two or more parties claiming the same patentable invention. See *35 U.S.C. § 135(2000)* [**11] ; *37 C.F.R. § 1.601(i) (2003)*. To establish priority, parties may rely on earlier filed applications because conception and constructive reduction to practice of the subject matter described in an application occur when the application is filed. See *Hyatt v. Boone, 146 F.3d 1348, 1352 (Fed. Cir. 1998)*; *Yasuko Kawai v. Metlesics,* [*1331] *480 F.2d 880, 885-86 (CCPA 1973)*. If a party is entitled to rely on an earlier filed application and the specification of that application shows a constructive reduction to practice of the count, no further evidence is needed to prove invention as of the filing date of that application. See *Hyatt, 146 F.3d at 1352*.

A party to an interference seeking to be "accorded the benefit of the filing date of an earlier filed application" under 37 C.F.R. 1.633(f) is seeking to establish an effective filing date. See *id. at 1351-52*. "The effective filing date of an application is the filing date of an earlier application, benefit of which is accorded to the application under *35 U.S.C. 119, 120, 121,* or *365 . . . .*" *37 C.F.R. § 1.601(g)* [**12] ; see also *Hyatt, 146 F.3d at 1352* ("When a party to an interference seeks the benefit of an earlier-filed United States patent application, the earlier application must meet the requirements of *35 U.S.C. § 120 . . . .*"). *Section 119(a)* of title 35 precludes relying on a foreign application for priority benefit when that application was filed more than one year before the filing of the corresponding U.S. application. *Schmierer v. Newton, 55 C.C.P.A. 1362, 397 F.2d 1010, 1014-15 (CCPA 1968)*. *Section 119(a)* reads:

(a) An application for patent for an invention filed in this country by any person who has . . . filed an application for a patent for the same invention in a foreign country . . . shall have the same effect as the same application would have if filed in this country on the date on which the application for patent . . . was first filed in such foreign country, if the application in this country is filed within twelve months from the earliest date on which such foreign application was filed . . . .

*35 U.S.C. § 119(a) (2000)*.

In the matter at hand, the Board held that because [**13] Tamai did not file with his motion for benefit an English language translation of the PCT '947 application and an affidavit attesting to the accuracy of the translation, Tamai had not proven that he was entitled to be accorded the filing date of the '947 application. Nonetheless, the Board granted Tamai's involved application the benefit of the Japanese '371 application, which was filed July 31, 1991, more than one year prior to the filing of the '183 application. Because *section 119* precludes reliance on a foreign application for priority benefit when that application was filed more than one year before the filing of the corresponding U.S. application, see *Schmierer, 397 F.2d at 1014-15*, the Board's conclusion was based on an erroneous conclusion of law, and accordingly, constituted an abuse of discretion.

V

At argument, Tamai conceded that he had no theories or evidence remaining before the Board by which to establish an actual or constructive reduction to practice prior to Stevens's February 10, 1993, date. Tamai agrees that if this court does not grant relief on his argument that a motion for benefit was unnecessary, or alternatively that his motion for benefit [**14] was sufficient, then this court should remand for judgment in favor of Stevens. In Tamai's view, a preliminary motion for benefit is unnecessary because *35 U.S.C. § 363* operates to make the filing date of the Japanese language PCT '947 application the same as that of the '183 application, which according to Tamai is the U.S. national stage

application of the PCT '947 application. Further, Tamai asserts that even if the Board could require a preliminary motion for benefit, the acts required to enter the national stage for examination purposes were sufficient acts to satisfy the Board's procedural requirements in this interference. Finally, Tamai argues that 37 C.F.R. § 639(a) combined with the [*1332] presence in the interference file of both the PCT '947 application and the '183 application obviates the requirement of interference rule 37 C.F.R. § 647 that Tamai serve a translation of the PCT '947 application and an affidavit attesting to the accuracy of the translation with the motion for benefit. Because the Board did not err in requiring a preliminary motion for benefit, because Tamai's compliance with the filing procedures for entering the national stage did not [**15] satisfy the procedural requirements for a preliminary motion for benefit, because Rule 639(a) does not obviate Rule 647, and because Tamai did not attach to his motion a translation of the PCT '947 application and an affidavit attesting to the accuracy of the translation, we hold that the Board was correct in denying Tamai's claim of benefit of the PCT '947 application. Accordingly, we reverse the Board's decision on reconsideration and remand with instructions to enter judgment in favor of Stevens.

A

Distilled, Tamai's argument that a motion for benefit was unnecessary in this interference rests on the premise that a motion for benefit cannot be required for non-English applications where the applicant has satisfied U.S. filing requirements for prosecution purposes. In this case, Tamai filed the PCT '947 application with the United States Patent and Trademark Office ("Office") for the purpose of entering national stage examination in the United States. Included with the application was the declaration of Tamai that stated "on information and belief," he was, inter alia, entitled to priority benefit of the Japanese '371 application. The PCT '947 application was accepted by the [**16] Office as having satisfied the requirements of 35 U.S.C. § 371 and became the '183 application. Tamai asserts, and we assume without deciding that Tamai correctly followed the procedures for filing the PCT '947 application in the United States. Thus, Tamai argues that when the Office accepts a translation of a foreign language international application into the national stage, the Board, in any interference in which the applicant later becomes embroiled cannot require that the applicant seeking the benefit of the foreign language

international application prove that the application contains the same disclosure as the national stage application. We disagree.

In its most favorable light, Tamai is stating that there is a conflict between Subpart E--Interferences, 37 C.F.R. §§ 1.601-1.690, which "governs the procedure in patent interferences in the Patent and Trademark Office," 37 C.F.R. § 1.601, and sections 363 and 371(c)(2) of title 35, as they provide authority for national stage applications.

The conflict Tamai suggests simply does not exist. Sections 363 and 371(c)(2) are not inconsistent with the Office's [**17] procedural requirements which insist that a party to an interference seeking the benefit of an earlier filed application prove the same by filing a motion for benefit, and, where applicable, serving a translation of a relied upon non-English language application with an affidavit attesting to the accuracy of the translation. The former sections deal with accepting an international application into national stage examination in the United States while the latter regulations deal with proving whether the application contains a constructive reduction to practice of subject matter corresponding to a count in an interference. In short, in the context of this case, sections 363 and 371(c)(2), and 37 C.F.R. §§ 1.601-1.690, have little to do with one another.

Section 363 of title 35 establishes that: "An international application designating the United States shall have the effect, from its international filing date under article 11 of the treaty, of a national application for patent regularly filed in the Patent [*1333] and Trademark Office . . . ." Subject to 35 U.S.C. § 119(a)-(d), section 365(a) of title 35 grants national applications the benefit [**18] of corresponding international applications which designated at least one country other than the United States. Section 371(c)(2) requires that an applicant filing a national stage application submit "a copy of the international application, unless not required under subsection (a) of this section or already communicated by the International Bureau, and a translation into the English language of the international application, if it was filed in another language." 35 U.S.C. § 371(c)(2) (2000). And, while overlooked by Tamai, 35 U.S.C. § 372(b)(3) permits the Director to "require a verification of the translation of the international application or any other document pertaining to the application if the application or other

document was filed in a language other than English." Thus, contrary to what Tamai suggests, the Office is not required to accept an applicant's transmittal letter requesting entry into the national stage as conclusive proof that a foreign language application contains a particular disclosure.

Further, as we have previously held, the broadest of the Office's rulemaking powers is the power to "establish regulations, not [**19] inconsistent with law, which--(A) shall govern the conduct of proceedings in the Office." *35 U.S.C. § 2(b)(2)(A) (2000)* (formerly at *35 U.S.C. § 6(a) (1988)*, see *Merck & Co. v. Kessler, 80 F.3d 1543, 1549 (Fed. Cir. 1996); Gerritsen, 979 F.2d at 1527*). By this grant of power we understand Congress to have "delegated plenary authority over PTO practice, including interference proceedings," to the Office. *Gerritsen, 979 F.2d at 1527 n.3.* The interference rules most pertinent to this case are 37 C.F.R. §§ 1.633(f), 1.637(a) (establishing that the movant has the burden of proof), 1.637(f) (requiring compliance with 1.647 where the earlier filed application is not in English), and 1.647 (requiring, when the earlier filed application is not in English, the filing of "a translation of the document into English and an affidavit attesting to the accuracy of the translation"). We observe that all of these rules appear to reflect a permissible exercise of the Office's authority and also note that Tamai presents no arguments to the contrary.

The interference regulations are designed [**20] to serve the policy of providing "the just, speedy, and inexpensive determination of every interference." *37 C.F.R. § 1.601.* It seems appropriate to us that the Office can allocate the burdens associated with this goal in a reasonable manner not inconsistent with the existing statutory scheme. See *Merck & Co., 80 F.3d at 1549; Gerritsen, 979 F.2d at 1527.* In the case of interferences, the Office has provided for a motion procedure that permits a party an opportunity to prove his right to priority benefit of an earlier disclosure. See 37 C.F.R. §§ 1.633(f), 1.637(a), (f). This includes an opportunity to prove priority to foreign language applications. Because a party seeking to be accorded the benefit of a foreign language disclosure is often in the best position to know the content of the disclosure, and because that party hopes to benefit from the content of that disclosure, it seems very reasonable that a party seeking to rely on such a disclosure have the burden of proving its content. In contrast to Tamai's thinking, the Board can require that the cost of a translator capable of attesting in [**21] an affidavit that the disclosure of a Japanese language document, i.e., the PCT '947 application, is the same as the disclosure of a national stage application that purports to be substantially the same, i.e., the '183 application, shall be borne by the party asserting that the latter is an accurate translation of the former.

In view of the reasonableness of the Office's rules governing the procedure in [*1334] patent interferences, and the substantial deference we accord such rules, see *Merck & Co., 80 F.3d at 1549,* we cannot agree with Tamai that *section 363* overwhelms the Office's interference rules and requires the Board to accord Tamai the benefit of the PCT '947 application merely because he completed the requirements for entering the national stage of examination in the United States.

B

Next, Tamai asserts that the acts necessary to comply with the procedures he followed in the course of entering the national stage of examination are a sufficient substitute for the acts required by the Office's interference rules. In light of our conclusion that the interference rules at issue are a reasonable exercise of the Office's procedural rulemaking, we hold that [**22] the acts Tamai took with regard to entering the national stage will only suffice to satisfy the requirements of the interference rules if the acts show compliance with the interference rules. Accordingly, this is a question of the Board's application of its interferences rules, an exercise we review for abuse of discretion. See, e.g., *Barbacid, 276 F.3d at 1332.*

The interference rules are quite explicit and we discern no abuse of discretion in the Board's decision that Tamai did not comply with Rules 637(f) and 647. In particular, the Board found that "Tamai did not supply a translation of the PCT application." In its decision on reconsideration, the Board affirmed this fact, stating: "Tamai was required to file a translation of the PCT application along with the motion. This Tamai did not do." This finding of the Board is supported by more than substantial evidence. At argument, Tamai conceded that he did not file with his motion for benefit an English language translation of the PCT '947 application and an affidavit attesting to the accuracy of the translation as required by Rule 647.

In his motion for reconsideration below Tamai argued that the '183 application [**23] was the

366 F.3d 1325, *1334; 2004 U.S. App. LEXIS 8773, **23;
70 U.S.P.Q.2D (BNA) 1765

translation of the PCT '947 application. However, the Board explained why that argument fails. In particular, the Board found that in neither Tamai's preliminary motion for benefit nor in reply to Stevens's opposition thereto did Tamai "state that the '183 application is a translation of the PCT application, attaching same, when the motion for benefit was filed." Because on its face Tamai's motion for benefit does not state that the '183 application is the translation of the PCT '947 application and the record contains no affidavit attesting that the '183 application is an accurate translation of the PCT '947 application, this finding is supported by substantial evidence.

Tamai next argues that to comply with *section 363*, he needed to comply with *section 371(c)(2)*, which requires a translation of the corresponding international application when that application is not in English. According to Tamai, when he presented the Office with a translation of the international application to enter national stage examination that act was sufficient to satisfy Rules 637(f) and 647. As the Board pointed out, however, *section 371(c)(2)* does not require an affidavit attesting to the accuracy [**24] of the translation, while Rule 647 does. Moreover, as our prior discussion indicates, compliance with filing requirements is not sufficient to prove constructive reduction to practice in an interference proceeding.

On appeal, for the first time, Tamai argues that the notice declaring the interference should have accorded him the benefit of the Japanese '371 application and the PCT '947 application. In light of our prior discussion, we think this a matter of the Board's discretion. The Board might, where an international application is in English, and therefore easily accessible in substance to the Board, accord priority to [*1335] such an application in its notice declaring an interference. However, we discern no requirement that the Board do so in every case, and no requirement that the Board do so when the application is in a foreign language, which makes it more difficult for the Board to determine whether the disclosure contains a constructive reduction to practice of the invention. In a case where the applicant should be accorded the benefit of an earlier application, but the Board does not accord benefit in the notice declaring the interference, the Board has, by regulation, provided [**25] the procedural protection of a preliminary motion procedure. Under that procedure a party can prove that it should be accorded the benefit of an earlier disclosure. That Tamai understood

and had access to this procedural protection is underscored by the fact that Tamai filed a preliminary motion seeking to be accorded the benefit of the Japanese '371 application, the PCT '947 application, and the '183 application.

C

Tamai also argues that although he never made known to the Board or Stevens that a translation of the PCT '947 application existed in the interference file as the '183 application, Rule 639(a), which requires that "proof of any material fact . . . be filed and served with the motion . . . unless the proof relied upon is part of the interference file . . . ," 37 C.F.R. 1.639(a), protects him from having to file a translation and affidavit as required by Rules 637(f) and Rule 647. We disagree.

As a preliminary matter, the Office's interpretation of its own regulations is entitled to substantial deference. *Bd. of Regents of the Univ. of Wash., 334 F.3d at 1266*. On reconsideration, the Board addressed this argument holding that Rule [**26] 639(a) does not obviate Rules 637(f) and 647. Given that Rules 637(f) and 647 are very clear in requiring the filing of a translation and affidavit with the preliminary motion for benefit, we defer to the Board's interpretation that Rule 639(a) and Rules 637(f) and 647 are separate rules that must be followed by parties to an interference. Moreover, we note that Tamai's argument on this point is undercut by the fact that his motion and reply did not notify the Board or Stevens that the '183 application was the translation of the PCT '947 application. Had Tamai alerted the Board and Stevens to the presence of the translation, and filed an affidavit attesting that the '183 application was an accurate translation of the PCT '947 application, the Board might have been more lenient.

VI

We have considered Tamai's remaining arguments and we find them either irrelevant or unpersuasive. In conclusion, we find that the Board did not abuse its discretion in refusing to award Tamai the benefit of the PCT '947 application. However, because Tamai was not entitled to the benefit of the PCT '947 application, the Board erred in awarding Tamai the benefit of the Japanese '371 application. Without [**27] the benefit of the PCT '947 application and the Japanese '371 application, Tamai's effective filing date, showing a constructive reduction to practice, is March 29, 1993.

366 F.3d 1325, *1335; 2004 U.S. App. LEXIS 8773, **27;
70 U.S.P.Q.2D (BNA) 1765

Because the Board granted Stevens's motion for benefit, according him an effective filing date of February 10, 1993, Stevens has proved a constructive reduction to practice earlier in time than Tamai. Accordingly, we remand to the Board with instructions to enter judgment for Stevens.

COSTS

No costs.

REVERSED AND REMANDED.